IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY GAMOTAN, | CASE NO. 1:05-cv-00743 TAG |
|     Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM |
| vs. | ADMINISTRATIVE DECISION |
| JO ANNE B. BARNHART<br>Commissioner of Social Security, | ORDER REMANDING CASE PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) |
|     Defendant. | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT |

    Plaintiff Harry Gamotan ("claimant" or "plaintiff") seeks judicial review of an administrative decision denying his claim for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381 et seq. Pending before the Court is claimant's appeal from an administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed his complaint on June 7, 2005 (Doc. 1), and his opening brief on January 19, 2006. (Doc. 13). The Commissioner filed her opposition on March 23, 2006 (Doc. 16). Claimant's reply brief was filed on March 30, 2006. (Doc. 18).

    Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge. (Docs. 7 and 11). By an order dated March 27, 2006, this action was assigned to the United States Magistrate Judge for all further proceedings. (Doc. 17).

///

# JURISDICTION

On January 10, 2002, claimant protectively filed[1] an application for supplemental security income. (Administrative Record ("AR") 103-07). Claimant's application was denied initially and on reconsideration (AR 63-71), whereupon claimant requested an administrative hearing. (AR 72). On February 26, 2003, Administrative Law Judge ("ALJ") Rocklin D. Lyons dismissed the request for hearing as untimely. (AR 54). The Appeals Council reviewed the dismissal, found that claimant had good reason for not filing his request for hearing in a timely manner, and remanded the matter back to the ALJ. (AR 81-82). A hearing was thereafter held on October 28, 2003 (AR 245-64) and on March 22, 2004, ALJ Lyons issued a written determination that claimant was not disabled under the Social Security Act. (AR 58-62).

Claimant again sought review from the Appeals Council and, on July 23, 2004, the Appeals Council again remanded. (AR 92-93). In its second remand order, the Appeals Council noted that the record was devoid of information regarding a back surgery that claimant was to have had on May 23, 200[3], and further that there was no information at all on the status of claimant's back impairments from May 2000 to March 22, 2004, the date of the hearing decision. (AR 92). Therefore, the Appeals Council ordered that, on remand, the ALJ was to (1) obtain additional evidence concerning claimant's orthopedic impairments in order to complete the administrative record (to include, if warranted, the inclusion of a consultative orthopedic examination), (2) give further consideration to claimant's maximum residual functional capacity, with appropriate rationale and specific references to evidence of record in support of the assessed limitations, (3) depending on the limitations and/or restrictions ultimately found, determine whether evidence from a vocational expert was needed and (4) determine whether claimant's May 2004 filing for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., should be consolidated with claimant's current supplemental security income claim under Title XVI. (AR 93).

///

---

[1] To qualify as an effective supplemental security income claim, an application for benefits must be submitted on a prescribed form. 20 C.F.R. § 416.305. However, a written statement indicating a person's intent to claim benefits can, if certain coincident and subsequent requirements are met, establish a protective filing date. 20 C.F.R. § 416.340.

After this second remand order by the Appeals Council, a second administrative hearing was conducted, this time before a new administrative law judge, James Berry, on November 29, 2004. (AR 265-89). Thereafter, in a written determination dated January 13, 2005, ALJ Berry found that claimant was not disabled. (AR 13-17). Claimant then sought review for a third time from the Appeals Council, but on April 15, 2005, review was denied. (AR 5-7), leaving ALJ Berry's decision of January 13, 2005, as the final decision of the Commissioner. On June 7, 2005, within sixty days of the Appeals Council decision, claimant timely appealed to the district court pursuant to 42 U.S.C. § 405(g). (Doc. 1).

## STATEMENT OF FACTS

**1.    Claimant's Testimony**

Claimant was born on May 15, 1966, making him 38 years old at the time of the administrative hearing before ALJ Berry. (AR 269). At that hearing, claimant testified that he had completed the 11th grade of high school. (Id.) Regarding his work history, claimant testified that he had last worked at a radiator shop in October 2000, and that he had prior employment at a smog shop where he worked on tune-ups, oil changes, brakes, mufflers and catalytic converters. (AR 272). In a Work History Report, claimant also noted his jobs at a furniture store in 1992 and at a pizza shop in 1990 to 1991. (AR 110).

As to his medical condition, claimant testified that he had once been in a car accident which shattered his left knee, injured his left arm, and caused blot clots in his eye and head. (AR 270). Metal pins were placed in claimant's left knee as a result of the incident. (AR 274). Claimant also testified that his back was injured on October 17, 2000, while working in a radiator shop. (AR 272). This injury, according to claimant, continues to cause pain on the right side of his back (near his hip), with his right leg often numb. (AR 271). Claimant explained his back and leg pains as follows:

> "It hurts when I sit down to get up. It hurts when I walk, and the inside of my leg hurts. I don't know how to describe the pain, it hurts so bad when I walk. All I do is grind up my teeth and keep walking because I can't do nothing about it. And my right leg is numb, my right ankle." (AR 274).

///

As to his exertional capacity, claimant testified that he could walk only 25 to 50 yards at a time and the he used a walker once or twice a week for an hour or two. (AR 272). Claimant also testified that the total amount of time he could stand in an eight-hour period would be about two hours, and that the total amount of time he could be in a seated position was maybe four hours. (AR 281). As to his lifting capacity, claimant stated that the heaviest item he could lift was "[p]robably my bottle of Gatorade." (AR 277).

Regarding his daily life activities, claimant testified that he watched television, practiced singing to the Lord, sometimes read the Bible and occasionally did the dishes. (AR 275). Claimant also stated that he cooked eggs and hash browns about once a week and sometimes did grocery shopping with his sons. (AR 278).

## 2. Claimant's Medical Records

On April 27, 2001, P.R. Chandrasekaran, M.D., prepared a synopsis of claimant's medical history through that date in conjunction with an initial orthopedic evaluation. (AR 154-60). As claimant's medical records are otherwise very sparse, this report is particularly helpful. It indicates that, on March 23, 1986, claimant hit a tree while driving drunk. (AR 156). He suffered a fracture of the left femur, for which a rod was placed and later removed. (AR 156-57). He also underwent evacuation of a subdural hematoma. (AR 156).

Dr. Chandrasekaran's report further noted that claimant was injured on October 4, 2000, while lifting a 100 pound radiator, causing a snap in his lower back and resulting in lower back pain, as well as pain radiating down claimant's right leg. (AR 154). Subsequent to this injury, on October 26, 2000, claimant was seen by Dr. Denning[2] who noted pain going down into claimant's right lower extremity with tenderness in the lumbosacral region. (AR 155). X-rays of the lumbar spine were reported to be normal. (Id.) Claimant was diagnosed with a lumbosacral strain for which he was prescribed Naprosyn and told to rest for several days. (Id.)

On November 7, 2000, claimant again saw Dr. Denning and reported continued low back pain, although objective findings upon examination were normal. (Id.) When claimant continued to

---

[2] Dr. Chandrasekaran's report identified only the surname for Dr. Denning.

complain of low back pain, he was referred by Dr. Denning for an MRI of the lumbar spine. (Id.) The MRI, performed on January 25, 2001, revealed degeneration and desiccation of the L5-S1 intervertebral disc space, with a loss of height and a moderate sized focal disc protrusion. (Id.) There was also degeneration and desiccation of the L4-5 intervertebral discs. (Id.)

Given the degenerative disc disease revealed by the MRI, claimant was referred to an orthopedic surgeon and, on February 5, 2001, was seen by Jerome Hall, M.D. (AR 156). Dr. Hall diagnosed claimant with lumbosacral strain, work related. (Id.) He also concluded that the MRI was relatively normal, with the exception of some mild to moderate degenerative disc disease at L5-S1 and L4-5. (Id.) However, given claimant's continued complaints of radicular pain to the right lower extremity, Dr. Hall referred him for a nerve conduction test. (Id.)

On March 21, 2001, claimant was seen by Charles Jablecki, M.D. for that nerve conduction study. (Id.) The study revealed S1 radiculopathy with evidence of both sensory and motor nerve pathology. (Id.)

On April 27, 2001, Dr. Chandrasekaran performed his own orthopedic evaluation of claimant. (AR 154-60). An x-ray of the lumbosacral spine was performed and showed mild narrowing of the L4-5 and L5-S1 disc space. (AR 157-58). Dr. Chandrasekaran's impression was that claimant had suffered a strain of the lumbosacral area, aggravated by degenerative disc disease at L4-5 and L5-S1. (AR 158).

On May 11, 2001, upon reporting persistent low back pain, claimant again was seen by Dr. Chandrasekaran, this time as his primary treating physician. (AR 152-53). Dr.Chandrasekaran's diagnosis was "[d]egenerative lumbar disc disease with residual pain in the low back. (AR 152). This was the first of a series of visits by claimant to Dr. Chandrasekaran, all resulting in the same diagnosis of degenerative lumbar disc disease. Thus, on June 15, 2001, claimant went to Dr. Chandrasekaran reporting low back pain radiating down his right leg and tingling in his right foot. (AR 150). During this visit, Dr. Chandrasekaran observed the following:

> "He was sitting in my office for fifteen minutes and when he got up, I saw that he had difficulty standing right away into a straight posture, because of the tightness in the low back. This is associated with pain. Also, he complains of paresthesia in the right foot. This is related to the degenerative lumbosacral disc disease." (Id.)

Additional visits occurred. On August 14, 2001, when claimant reported lower back pain and an inability to stand straight, he was diagnosed by Dr. Chandrasekaran with "[d]egenerative lumbar disc disease with good and bad days." (AR 148-49). A treatment plan of physical therapy with ultrasound and hot packs to relieve spasms was ordered. (Id.) On September 21, 2001, claimant again was seen by Dr. Chandrasekaran for continuing low back pain and, yet again, Dr. Chandrasekaran's impression was "[d]egenerative lumbar disc disease with good days and bad days." (AR 146).

On March 25, 2002, claimant presented to Kern Medical Center, the first of a number of such visits, complaining of lower back pain. (AR 234).

On April 14, 2002, claimant went to Bakersfield Memorial Hospital with complaints of back pain. (AR 180-93). He was attended by John Fortenberry, M.D., who diagnosed "[c]hronic low back pain, with acute exacerbation." (AR 181).

On June 12, 2002, due to his application for supplemental security income benefits, claimant underwent an orthopedic consultative examination by Jonathan M. Gurdin, M.D. (AR 161-63). Dr. Gurdin reviewed claimant's lumbar MRI (performed almost 1 ½ years earlier on January 25, 2001) and nerve conduction study (performed more than a year earlier on March 21, 2001). Upon examining claimant, Dr. Gurdin diagnosed degenerative lumbar disc disease with probable right nerve root irritation, as well as prior fracture of the left femur with slightly restricted left knee motion. (AR 163). Dr. Gurdin also opined as to the following exertional limitations: (1) an ability to sit or stand for six out of eight hours with appropriate breaks and (2) an ability to lift and carry at least 25 to 30 pounds occasionally and 15 pounds frequently. (Id.)

On August 21, 2002, claimant returned to Kern Medical Center and reported right hip pain down to his right ankle. (AR 222). The Appeals Council made the following comment as to this hospital visit:

> "[T]he medical evidence shows a worsening of the claimant's back condition on August 21, 2002, when the claimant presented with complaints of increased pain over the past two months, antalgic gait, pain radiating down the right leg, and decreased range of motion of the back of 45 degrees in flexion and 20 degrees in extension (exhibit 7F/27-28)." (AR 92).

Claimant again visited Kern Medical Center on March 17, 2003 reporting back pain and numbness/tingling in his right leg. (AR 212). Notes from this visit by Tim M. Saylor, M.D., state that claimant was experiencing radicular back pain. (AR 218). A CT scan was ordered and showed evidence of degenerative disc disease at L5-S1, a diffuse disc bulge at L4-5 that slightly indented the thecal sac and – in contrast to claimant's January 25, 2001 MRI – a "*large* right paracentral/lateral disc extrusion at the L5-S1 on the right with mass effect on the thecal sac and mass effect on the right sided nerve root." (AR 207)(emphasis added). Dr. Saylor's notes from this visit concluded that "[n]erve involvement [is] severe [and] will probably require neurosurgical intervention." (AR 218). Given Dr. Saylor's assessment that surgical intervention was required, claimant was directed to a neurosurgery clinic. (Id.)

On April 8, 2003, claimant was assessed by Charles J. Wroebel, M.D., at the Neurosurgery Clinic of Kern Medical Center. (AR 201). Dr. Wroebel noted as follows:

> "The patient presents . . . with a lumbar disk herniation at right L5-S1, which is large. He is very symptomatic with severe right sciatica and numbness on the bottom of his foot. . . . He does have a very positive straight leg raise test in the clinic, but no other findings. . . . Given his degree of pain and the fact that it has been present for three months, a microlumbar disk excision is indicated." (AR 201).

On April 30, 2003, claimant again was seen by Dr. Wroebel, this time for a preoperative evaluation. (AR 198). Dr. Wroebel noted that the procedure would be a microlumbar disk excision to address claimant's severe sciatica. (Id.) On May 21, 2003, claimant again returned for an evaluation by Dr. Wroebel, whose notes indicated that a previously scheduled operation was canceled because claimant had a cough in preop holding. (AR 194). Dr. Wroebel rescheduled surgery for May 23, 2003, noting that claimant "has a large right L5-S1 disk herniation." (Id.) However, there is no indication in the record that surgery ever occurred.[3]

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[3] At his first administrative hearing, on October 28, 2003, claimant testified that he was told that surgery would not be performed because he had canceled too many times, although he disputed that he had canceled more than once. (AR 261).

1  expected to result in death or which has lasted or can be expected to last for a continuous period of
2  not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides
3  that a claimant shall be determined to be under a disability only if his impairments are of such
4  severity that claimant is not only unable to do his previous work but cannot, considering claimant's
5  age, education and work experiences, engage in any other substantial gainful work which exists in
6  the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

7  The Commissioner has established a five-step sequential evaluation process for determining
8  whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged
9  in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b).
10 If he is not, the analysis proceeds to step two, which considers whether claimant has a medically
11 severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

12 If claimant does not have a severe impairment or combination of impairments, the disability
13 claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which
14 compares claimant's impairment with a number of listed impairments acknowledged by the
15 Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d),
16 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed
17 impairments, claimant is conclusively presumed to be disabled. If the impairment is not one
18 conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines
19 whether the impairment prevents claimant from performing work he has performed in the past. If
20 claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e),
21 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines
22 whether he is able to perform other work in the national economy in view of his age, education and
23 work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137
24 (1987).

25 The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement
26 to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five
27 step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the
28 claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to

assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)("'[w]e may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error'")(quoting Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002)); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) ("[t]he [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence")(citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold

the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1988).

**ALJ'S FINDINGS**

**Step One**

The ALJ found at step one that claimant "has not engaged in substantial gainful activity since the alleged onset of disability."  (AR 16).

**Step Two**

At step two, the ALJ found that claimant suffered from degenerative disc disease, an impairment which he considered "severe."  (AR 16).

**Step Three**

At step three, the ALJ assessed whether claimant's impairments, while severe, were among those acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  See 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  The ALJ concluded that claimant's impairments did not meet or equal any of the listed impairments.  (AR 16).

**Step Four**

At step four, the ALJ found that claimant had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, could sit, stand and walk 6 hours out of an 8-hour day, and could occasionally stoop, kneel and crouch.  (AR 16).  Based upon these exertional limitations, the ALJ concluded that claimant could perform his past relevant work as a pizza maker and, therefore, was not under a disability as defined in the Social Security Act.  (AR 16-17.)

///

///

1  **Step Five**

2  Having determined that claimant could perform his past relevant work, the ALJ did not
3  proceed to step five of the sequential analysis.

4  **ISSUES**

5  Claimant's Opening Brief raised the following issue for consideration:

6  1. Whether the ALJ erred in discrediting claimant's credibility and subjective complaints.

7  2. Whether the ALJ failed to comply with the Appeals Council's remand order.

8  This Court must uphold the Commissioner's determination that claimant is not disabled if the
9  Commissioner applied the proper legal standards and there is substantial evidence in the record as a
10 whole to support the decision.

11 **DISCUSSION**

12 **1.   Claimant's Credibility and Subjective Complaints**

13 Claimant asserts that the ALJ "failed to set forth legally sufficient reasons for rejecting [his]
14 subjective complaints." (Doc. 13, p. 8).  According to claimant, he suffers from medically
15 determinable impairments "which would reasonably be expected to produce some pain and
16 functional limitations." (Doc. 13, p. 9).  Those limitations, if credited as true, would in the opinion
17 of a vocational expert render claimant disabled under the Act. (AR 285-86).

18 Here, it is evident - from not one but several perspectives - that the ALJ improperly
19 discredited claimant's subjective complaints.  As noted below, the ALJ's credibility determination
20 was erroneous insofar as it ignored more recent medical evidence.  Also as noted below, the ALJ's
21 determination failed to articulate specific, clear and convincing reasons for the rejection of
22 claimant's subjective complaints.

23 **I.    Failure to Consider Current Medical Records**

24 In order to properly consider claimant's pain-related complaints and his subjective
25 assessment of his limited exertional capacity, the ALJ was required to test those complaints against
26 *all* available medical records.  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)("'in evaluating
27 a claimant's subjective complaints of pain . . ., the adjudicator must give full consideration to *all* of
28 the available evidence, medical *and other*, that reflects on the impairment and any attendant

limitations of function'") (citation omitted, emphasis in original); SSR 96-7p ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence").

In the instant case, the Court finds that the ALJ's credibility determination was based largely, and improperly, upon medical records prior to the worsening of claimant's medical condition. That claimant's medical condition had worsened over time cannot be disputed. The Appeals Council explicitly noted as much when it remanded the matter on July 23, 2004 for an additional administrative hearing on claimant's impairments:

> "[T]he medical evidence shows a worsening of the claimant's back condition on August 21, 2002, when the claimant presented with complaints of increased pain over the past two months, antalgic gait, pain radiating down the right leg, and decreased range of motion of the back . . . . [T]here is no information on the status of the claimant's back impairments from May 2002 to March 22, 2004, the date of the hearing decision." (AR 92).

In light of this worsening condition, the Appeals Council ordered the ALJ to obtain "additional evidence" such as "a consultative orthopedic examination and medical source statements about what the claimant can still do despite the impairment." (AR 15, 93).

No such additional evidence was obtained. Even so, it is clear from claimant's medical history as set forth in the Statement of Facts that his condition had been deteriorating. Whereas a January 25, 2001 MRI showed mild to moderate degenerative disc disease at LF-S1 and L4-5 (AR 156), a CT scan several years later, on March 17, 2003, showed a "<u>large right paracentral/lateral disc extrusion</u> at the L5-S1 on the right with mass effect on the thecal sac <u>and mass effect on the right sided nerve root</u>." (AR 207). This objectively determined right-side nerve root involvement coincides, as it happens, with the same right side as to which claimant testified that he experienced leg pain and numbness. (AR 271, 274). In addition, while claimant's earlier medical tests made no reference to a positive straight leg test, by April 2003 claimant exhibited a "very positive straight leg test" (AR 201), a fact explicitly noted by the Appeals Council. (AR 92). This is significant because, in assessing whether a lower back spinal disorder meets or equals a listed impairment and is therefore disabling by definition, a positive straight leg test is the *only* criteria considered over and above those factors applicable to disorders of the spine generally. The pertinent listing in fact states:

> *Disorders of the spine* (e.g., herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, <u>degenerative disc disease</u>, facet arthritis, vertebral fracture), <u>resulting in compromise of a nerve root</u> (including the cauda equina) or the spinal cord, [w]ith:
>
> A. <u>Evidence of nerve root compression</u> characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) <u>accompanied by sensor or reflex loss</u> and, <u>if there is involvement of the lower back, positive straight-leg raising test</u> (sitting and supine)."

20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04 (emphasis added).

Notwithstanding the objectively-determined deterioration over time of claimant's disc extrusion at L5-S1, a deterioration noted by the Appeals Council itself, the ALJ did not compare claimant's subjective complaints against any medical records circa 2003 or beyond[4], did not compare claimant's complaints against any of the medical records deemed significant by the Appeals Council, and relied heavily on a consultative examination by Dr. Gurdin performed in June 2002 (which itself depended on an MRI done almost 1 ½ years earlier in January 2001).

Moreover, contrary to a recommendation of the Appeals Council, the ALJ did not obtain "additional evidence" such as "a consultative orthopedic examination and medical source statements about what the claimant can still do despite the impairment." (AR 15, 93).[5] Given the deterioration of claimant's condition over time, the administrative regulations themselves appear to have required an updated consultative orthopedic examination. As stated in 20 C.F.R. § 416.919a(b)(5)(emphasis added):

> "(b) *Situations requiring a consultative examination*. . . . [The following] situations . . . will normally <u>require</u> a consultative examination:
>
> . . .
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work, or, if you are a child, your functioning, but the current severity of your impairment is not established."

---

[4] The ALJ noted claimant's post-2002 medical records in his synopsis of all of claimant' records (AR 14), but made no further reference to them.

[5] Counsel for claimant also requested a new consultative examination, noting that the prior such examination was over two years old and that more current medical records did not exist because claimant did not have the funds for treatment. (AR 288). This request for an updated consultative examination was denied by the ALJ. (AR 289).

The Court cannot conclude that substantial evidence supports a determination of the Commissioner when the Commissioner herself appears not to have considered, or developed, the entirety of such evidence. Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983)("The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence") (*citing* 42 U.S.C. § 405(g)).

### ii. Insufficiency of Reasons Stated Generally

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. Smolen, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-82. If claimant satisfies this test - and if there is no evidence of malingering - the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Id. at 1281. Such specificity is crucial so as to enable effective judicial review. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (Jul. 2, 1996) (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

In the instant case, and with regard to the ALJ's specific, clear and convincing reasons for discounting claimant's subjective assessment of his pain and his exertional limits, only one factor was stated (other than a list of evidentiary items upon which the ALJ offered no comment): "The claimant has not received treatment consistent with a chronic pain syndrome such as biofeedback, acupuncture, use of a TENS unit, or attendance at a pain management clinic." (AR 15). The Court finds that this single reason for discounting claimant's self-stated pain and exertional limitations misses the point that claimant repeatedly sought treatment for his pain, often going to the emergency room for help. (See Statement of Facts, supra). By mid-2003, moreover, claimant was deemed by two different physicians - Dr. Saylor and Dr. Wroebel - to be in need of surgical intervention, a

1  microlumbar disc excision.  (AR 201, 218).[6]

2  Apart from citing claimant's level of treatment, the ALJ simply listed evidence and an
3  ultimate conclusion that "[w]eighing all the relevant factors . . . claimant's impairments are not as
4  limiting as he alleges."  (AR 15).  It is impossible from the data listed, and from the brief ultimate
5  conclusion stated, to discern the specific factors that clearly and convincingly undermined claimant's
6  credibility in the eyes of the ALJ.  (See AR 15).  In such a situation, a mere recitation of credibility
7  factors - let alone a mere recitation of evidence - is not enough.  SSR 96-7p ("It is not sufficient for
8  the adjudicator to make a single, conclusory statement that 'the individual's allegations have been
9  considered' or that 'the allegations are (or are not) credible.'  It is also not enough for the adjudicator
10 simply to recite the factors that are described in the regulations fo evaluating symptoms.  The
11 determination or decision must contain specific reasons for the finding on credibility, supported by
12 evidence in the case record, and must be sufficiently specific to make clear to the individual and to
13 any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons
14 for that weight").

---

[6] It is possible that the ALJ also felt claimant's credibility was suspect in terms of fluctuations in his stated exertional capacity.  As the ALJ wrote: "The claimant first testified that he could walk 20 to 50 yards, stand for 10 to 15 minutes, but cannot kneel or stoop.  He later testified he could stand up to 2 hours in an 8-hour day, walk 2 blocks one way, and sit for 4 hours in an 8-hour day."  (AR 15).  However, there is no inconsistency between walking for 20 to 50 yards on the one hand, and walking 2 blocks on the other.  Moreover, contrary to what the ALJ wrote, claimant very clearly did *not* testify that he could only "stand for 10 to 15 minutes" (supposed testimony that was later, as implied by the ALJ, contradicted by claimant's statement that he could stand for up to 2-hours in an 8-hour day).  Rather, it was only the claimant's attorney who observed that claimant had been standing at the administrative hearing for some 10 to 15 minutes.  (AR 277).  The claimant did not offer this as one of two inconsistent versions of his exertional capacity:

Q:   Do you have trouble standing?  Now you've been standing here for about 10 or 15 minutes.  Could you stand for six hours out of an eight-hour day?

A:   No.
. . .

ALJ: Well, let me ask you about your maximum physical capabilities.  Standing over an eight-hour period, how much of that time do you think you'd be able to stand?  Total amount of time you'd be able to stand in eight hours.

A:   Probably an hour and a half, two hours maybe."  (AR 277, 280).

Finally, when he presented claimant's view of his exertional capacity to a vocational expert, the ALJ himself repeated claimant's one and one-half to two hour figure.  (AR 285).

15

For the foregoing reasons, the Court concludes that the ALJ improperly discredited claimant's credibility vis-a-vis his pain-related complaints and his stated exertional capacity. By way of remedy, claimant requests that the Court credit his testimony as true and make a finding of disability. (Doc. 13, pp. 10-11). While claimant's testimony could be credited as true if, inter alia, there were no outstanding issues to be resolved before a determination of disability could be made, Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003), the Court finds that outstanding issues do remain in this case. Specifically, and as the Appeals Council itself stated, "additional evidence concerning claimant's orthopedic impairments [is required] in order to complete the administrative record in accordance with regulatory standards regarding consultative examinations and existing medical evidence." (AR 93). See 20 C.F.R. § 416.919a(b)(5)(consultative examination is required when there is an indication of a change in condition that is likely to affect the ability to work and where the current severity of an impairment is not established). Upon remand, the ALJ should order an updated consultative orthopedic examination, with appropriate updated laboratory tests as required,[7] in order to complete the administrative record.

## 2. Failure to Comply with Appeals Council Remand Order

Claimant asserts that the ALJ erred by failing to supplement the record with additional medical evidence, or with a current consultative examination, as ordered by the Appeals Council when it remanded the matter on July 23, 2004. (Doc. 13, pp. 7-8, AR 93). Though not cited by either party, there is an administrative regulation explicitly requiring an ALJ to comply with remand orders. 20 C.F.R. § 416.1477(b)("The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order"). Notwithstanding, and without reference to this regulation, the published opinions are split with regard to a district court's jurisdiction to review adherence to an Appeals Council order. Compare Gabaldon v. Barnhart, 399 F. Supp. 2d 1240, 1251 (D.N.M. 2005) ("this Court's jurisdiction extends only to the final decision of the Commissioner . . . . As such, I do not have jurisdiction to consider Plaintiff's contentions regarding the A.L.J.'s adherence to the Appeals

---

[7] A updated consultative examination is used to secure "needed medical evidence the file does not contain such as . . . laboratory tests." 20 C.F.R. § 416.919a(2).

Council's remand order") with Jones. v. Barnhart, 372 F. Supp. 2d 989, 997, 1004-05 (S.D. Tex. 2005)("ALJ filed to comply with the Appeals Council's order").  There is no published Ninth Circuit authority on point.

In light of the Court's holding, supra, pursuant to which remand is required for development of the administrative record, this Court need not resolve the aforementioned jurisdictional conundrum.

## CONCLUSION

The Court has the discretion to remand the case for additional evidence and finding or to award benefits.  Smolen v. Chater, 80 F.3d at 1282.  The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose.  Id.  Remand is appropriate when additional administrative proceedings could remedy defects.  Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).  In this case, further development is necessary for a proper determination to be made.  Specifically,  additional evidence concerning claimant's orthopedic impairments is required in order to complete the administrative record, whereupon proper application of the two step analysis applicable to consideration of a claimant's subjective credibility must be performed by the ALJ, as noted above.

For the reasons outlined above, the undersigned concludes that the Commissioner's decision to deny claimant disability benefits was not supported by substantial evidence in the record and was not based upon the proper legal standards.

Accordingly, it IS ORDERED that

1. Claimant's social security complaint IS GRANTED;

2. The matter IS REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for development of the record and further consideration, consistent with this decision, of claimant's status as disabled, including whether claimant's impairments are so severe as to preclude substantial gainful activity, 20 C.F.R. § 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1; whether claimant is capable of performing work he has performed in the past,  20 C.F.R. § 416.920(f); and, if required, whether on the basis of claimant's age, education, work experience, and residual functional capacity,

///

claimant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 416.920(g); and

      3.      Judgment BE ENTERED for claimant Harry Gamotan and against Defendant Jo Anne B. Barnhart.

IT IS SO ORDERED.

Dated: **July 7, 2006**                                        **/s/ Theresa A. Goldner**
**j6eb3d**                                                   UNITED STATES MAGISTRATE JUDGE